**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 20, 2019[*]
Decided March 22, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 18-2620

| | |
|---|---|
| CHRISTOPHER BLAKE, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 17-cv-220-bbc |
| CANDACE WARNER, et al., *Defendants-Appellees*. | Barbara B. Crabb, *Judge*. |

**O R D E R**

Christopher Blake, a Wisconsin inmate, lives with an inflammatory condition that requires daily medication. Twice in 2014, Blake experienced delays in receiving his medication, prompting Blake to sue prison officials under 42 U.S.C. § 1983 for violating the Eighth Amendment. Because Blake did not submit evidence sufficient to permit a finding that any defendant deliberately disregarded his health, we affirm the district court's judgment in their favor.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

We review de novo the district court's decision, construing all facts and reasonable inferences in Blake's favor. See *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017). While in custody, in January 2013 Blake was diagnosed with a condition in which certain types of blood cells and tissues are inflamed, causing shortness of breath from asthma or inflammation in the lungs. The defendants concede that it is a serious medical condition. After Blake's diagnosis, Candace Warner, the head of the health-services unit of his prison, New Lisbon Correctional Institute, informed health staff of the seriousness of Blake's condition and his medications.

One year later, Blake's condition worsened. On a visit to a local hospital's emergency room, a doctor recommended that Blake complete a ten-day course of the antibiotic clindamycin, and a New Lisbon physician approved the prescription. At New Lisbon, a nurse gave Blake enough clindamycin for five days, the amount in stock at the prison. She wrote the amount that she had dispensed to Blake in his file, and she told him that she would order the remainder from the central pharmacy. But she did not place the order, nor did she note in the file that an order had been placed or list the drug in the prison's book of pending prescription requests. This nurse is not named as a defendant in Blake's complaint.

After he finished his supply of clindamycin, Blake requested a refill of the antibiotic. The nurse who reviewed his request, Toni Johnson, inspected Blake's medication file and told Blake that his request could not be filled because there was "[n]o current order." She instructed him to ask to see the prison's medical staff. Two days later, Blake submitted that request, stating, "I need to see a nurse. It['s] about medications." Angela Stetter, another nurse, received that request the next day, a Saturday, and scheduled an appointment for Blake on Monday. By then, it was a full week after he should have begun the second half of treatment. Blake felt as though his lungs were "filling up," and he became very congested and had respiratory distress. Stetter called New Lisbon's physician, who adjusted Blake's medications and prescribed a new antibiotic. Blake improved within the week.

Less than one month later, another delay occurred when Blake submitted a request to refill six prescriptions. The health-services unit had five of the drugs in stock and filled them immediately, but the sixth, montelukast, was not available. Following the normal process, Stetter ordered it from the central pharmacy, and Johnson notified Blake that the drug had been ordered. Warner, the unit's head, had told the nursing staff to fill prescriptions from a local pharmacy if the central pharmacy could not timely fill orders. But neither nurse knew at that time that the central pharmacy was running

behind its typical turnaround time. It took eleven days to fill Blake's prescription for montelukast. In the meantime, he exhausted his supply. Once he ran out, he told the health-services unit that his lungs "seem[ed] to be filling with fluid." Stetter saw Blake the day that she learned this and promptly summoned the prison's doctor. The doctor sent Blake to the hospital, where he received a dose of montelukast. Once he received the montelukast refill, his condition improved, and he had no viral colds or antibiotic use in the following months.

After Blake filed this lawsuit, the district court allowed him to proceed with claims against Warner, Johnson, and Stetter for deliberate indifference to his medical needs. The court instructed Blake that, if he discovered more persons responsible for ordering his medication, he needed to amend his complaint promptly. Ten months later, after the parties had cross-moved for summary judgment, Blake told the court that the nurse who did not order his clindamycin was to blame for his not receiving the antibiotic, and he asked for leave to add that nurse as a defendant. The court denied the motion and entered summary judgment for the defendants. It reasoned that Blake had not explained his delay in seeking to add the nurse, failed to allege a sufficient claim against the nurse, and had not furnished evidence suggesting that the named defendants consciously disregarded Blake's medical needs.

On appeal, Blake first argues that in two respects Johnson was deliberately indifferent to his serious medical needs. First, when Blake asked Johnson to provide him with another five days of clindamycin, she refused to do so, saying that "[n]o current order" for it was pending. Second, she did not inquire whether the central pharmacy could timely refill the montelukast prescription that Stetter had placed. A medical provider may violate the Eighth Amendment by consciously disregarding an inmate's need for medical treatment or unduly delaying that treatment. See *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (en banc) (collecting cases); *Zaya v. Sood*, 836 F.3d 800, 805–06 (7th Cir. 2016); *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011).

Blake has not submitted evidence that Johnson consciously disregarded a risk to Blake's health. When Blake requested another five days' worth of clindamycin, Johnson reviewed his file, told him that she could not give him the drug because no one had ordered a refill for him, and instructed him to go to the health-services unit. That was a reasonable response to the absence of a pending order for a drug with no refill allotment. We are mindful that if Johnson had closely read Blake's file, she may have discovered that he had received only half of his original prescription. But that omission is at most carelessness, and negligence is not sufficient to establish a violation of the

Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nor can Blake get to a trial on his claim that, because Johnson told him that the montelukast had been ordered, she is culpable for not realizing that Stetter had ordered it from a pharmacy that was backed up. Her ignorance about the pharmacy's delay in filling prescriptions placed by another nurse was not a shortfall in her care that was "so blatantly inappropriate as to evidence intentional mistreatment." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Blake next turns to his claim against Stetter, but again his evidence is lacking. He contends that she deliberately ignored his needs by scheduling an appointment for him on a Monday, two days after she received his request to see a nurse "about medication." But Blake did not explain to her that he had not received his full dose of clindamycin, did not state that he was out of medication, and did not describe any symptoms. Thus, nothing suggested to her that Blake could not wait until the next business day. And when she did see him on Monday, she called a doctor to see him. Summary judgment therefore was proper. See *Johnson v. Doughty*, 433 F.3d 1001, 1010–11 (7th Cir. 2006).

Blake next argues that Warner, the head of the health-services unit, violated the Eighth Amendment by not doing enough to prevent the medication delays. But Warner was not personally involved or even aware of any of the decisions that delayed his medications. A theory of liability "by the deliberate-indifference route" cannot be based on respondeat superior. See *Vance v. Rumsfeld,* 701 F.3d 193, 204-05 (7th Cir. 2012) (en banc). Thus, the district court properly granted summary judgment in Warner's favor. See *Arnett*, 658 F.3d at 759–60.

One final procedural matter. Blake contends that the district court wrongly denied him leave to add as a defendant the nurse who failed to order his clindamycin. We review that decision for abuse of discretion. See *Chatham v. Davis*, 839 F.3d 679, 686 (7th Cir. 2016). A court need not grant leave to amend when the request comes after undue delay. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Chatham*, 839 F.3d at 686. Such delay occurred here. The district court instructed Blake ten months before his proposed amendment that he needed to seek leave to amend promptly if he discovered more defendants. But when Blake finally proposed his amendment, both parties had moved for summary judgment, and he offered no reason to excuse his delay. Accordingly, we see no abuse of discretion. *Soltys v. Costello*, 520 F.3d 737, 743–44 (7th Cir. 2008).

AFFIRMED